707 So.2d 1050 (1998)
Carol PINNICK, et al., Plaintiff-Appellant,
v.
LOUISIANA STATE UNIVERSITY MEDICAL CENTER, et al., Defendant-Appellee.
No. 30263-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
*1051 Georgia P. Kosmitis, Shreveport, for Appellant.
Wilkinson, Carmody & Gilliam by Arthur R. Carmody, Jr., Shreveport, for Appellee.
Before GASKINS, CARAWAY and PEATROSS, JJ.
PEATROSS, Judge.
In this medical malpractice action, the surviving children of Ms. Syble Leinweber ("Plaintiffs") appeal the trial court judgment dismissing their claim that defendants breached the appropriate standard of medical care in the treatment of their mother. For the following reasons, we affirm.

FACTS
On April 21, 1991, Ms. Syble Leinweber, age 72, went to the Louisiana State University Medical Center ("LSUMC") emergency room and complained of chest pain. At LSUMC, Ms. Leinweber underwent an electrocardiogram, which showed abnormalities. She was diagnosed as suffering unstable angina and was admitted to LSUMC for further testing and evaluation.
On April 22, 1991, Ms. Leinweber underwent a treadmill "stress test," which was terminated due to fatigue. The results of the "stress test" were "positive" and Ms. Leinweber was scheduled for a cardiac catheterization, which was performed on April 24, 1991. The cardiac catheterization revealed that the first branch of the left main coronary artery was approximately 80-90% blocked, the circumflex coronary artery was approximately 100% blocked and the right coronary artery was approximately 100% blocked. Ms. Leinweber's left main coronary was, however, free of significant occlusive disease and her ventricular systolic function was normal. She was diagnosed as suffering significant three-vessel disease with unstable angina. *1052 Ms. Leinweber and her family were told that she needed surgery for coronary artery bypass grafting.
On April 27, 1991, Ms. Leinweber was discharged from LSUMC, with prescriptions for medications to relieve her symptoms. She was told someone from the hospital would call within approximately a month to schedule the surgery.
On May 7, 1991, Ms. Leinweber returned to LSUMC complaining of fever, sore throat and cough. She was given a prescription for an antibiotic and discharged to home.
On May 9, 1991, Ms. Leinweber returned to the LSUMC clinic, reporting vomiting and shortness of breath. The attending physician told Ms. Leinweber to discontinue the antibiotic. At this visit, Ms. Leinweber and her daughter asked when Ms. Leinweber would be scheduled for surgery, but the attending physician gave her no specific date for surgery at that time, however, and she was discharged to home.
The following day, May 10, 1991, Ms. Leinweber returned to the LSUMC emergency room in distress. She suffered a major, acute myocardial infarction or "heart attack." Ms. Leinweber was hospitalized and remained in LSUMC until May 21, 1991, when she was transferred to Willis-Knighton Medical Center. She died at Willis-Knighton Medical Center on May 24, 1991.
Plaintiffs filed a complaint under the Louisiana Medical Malpractice Act against the State of Louisiana, through the Department of Health and Hospitals, and LSUMC ("Defendants"). On May 24, 1994, the medical review panel unanimously held that the evidence did not support the conclusion that Defendants failed to comply with the appropriate standard of care.[1]
Subsequently, Plaintiffs filed a wrongful death and survival action in district court. After a bench trial on June 25-27, 1996, the trial court rendered judgment rejecting Plaintiffs' demands. Plaintiffs appeal from this judgment.
In their first assignment of error, Plaintiffs assert that (1) the trial court erred in finding that Defendants obtained informed consent; (2) the trial court erred in finding Defendants' treatment of Syble Leinweber was reasonable and diligent and exercised with best judgment; and (3) the trial court erred in applying the burden of proof in this medical malpractice action. In their second assignment of error, Plaintiffs argue the trial court erred in not awarding damages. We address the issues in the first assignment of error, but, because we affirm the trial court's decisions on those issues, do not reach the issue of damages set forth in Plaintiffs' second assignment of error.

DISCUSSION

I. Did the trial court err in finding that Defendants obtained informed consent?

We first address Plaintiffs' assertion that the trial court erred in finding that Defendants obtained informed consent. Plaintiffs argue that the record clearly shows that the defendant physicians failed to disclose the material risks of heart attack and sudden death to Ms. Leinweber and her family. Disclosure of these material risks, Plaintiffs argue, would have indicated to Ms. Leinweber that she should not wait to be scheduled for the bypass surgery at LSUMC, but should seek immediate surgery elsewhere. Defendants urge that the issue of consent was not pled in the medical review panel proceeding nor in the petition filed in district court and, therefore, cannot properly be considered on appeal.
Pretermitting any discussion of whether the informed consent issue was properly raised at the medical malpractice panel and trial court levels, we find that there is evidence in the record to support a finding that Plaintiffs failed to prove a lack of informed consent.
*1053 Where the circumstances permit, the patient should be told the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the risks involved therein, the prospects of success, the risks of failing to undergo any treatment or procedure at all, and the risks of any alternate methods of treatment. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988); Yuska v. HCA Health Services of Louisiana, Inc., 28,878 (La.App.2d Cir. 12/11/96), 684 So.2d 1093; Roberts v. Cox, 28,094 (La.App.2d Cir. 2/28/96), 669 So.2d 633.
In a medical malpractice action based on inadequate disclosure of risk information by a physician, the patient must provide evidence to establish prima facie the essential elements of the cause of action. The plaintiff bears the burden of proving the existence of a material risk unknown to the patient; a failure to disclose the risk on the part of the physician; that disclosure of the risk would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment; and injury. Yuska v. HCA Health Services of Louisiana, Inc., supra; Roberts v. Cox, supra.
The materiality of a risk depends on the existence and nature of the risk and the likelihood of its occurrence. Expert testimony is required regarding these elements. Hondroulis v. Schuhmacher, supra; Yuska v. HCA Health Services of Louisiana, Inc., supra. Materiality also means that a person in the plaintiff's position would attach significance to the particular risk. This inquiry does not require expert testimony. Hondroulis v. Schuhmacher, supra; Yuska v. HCA Health Services of Louisiana, Inc., supra. The physician need not disclose risks that are not reasonably foreseeable. Yuska v. HCA Health Services of Louisiana, Inc., supra; Smith v. Lincoln General Hospital, 27,133 (La.App.2d Cir. 6/21/95), 658 So.2d 256, writ denied, 95-1808 (La.10/27/95), 662 So.2d 3.
In the instant case, the trial judge, in his written reasons for judgment, noted that Dr. Herbert Master testified that the issue of informed consent was not raised before the medical review panel. Consequently, the trial judge stated, the issue should not be before the trial court.
The trial judge continued, however, to articulate his observations on the issue "to the extent" that the issue was before the trial court. The trial judge stated that, according to Dr. Master, surgery was an alternative to conservative medical treatment for a patient in Ms. Leinweber's condition. The judge cited Dr. Master's testimony that, had Ms. Leinweber been his patient and had she opted for surgery after being advised of her options, he would then have sent her home to wait to be advised of the date that surgery was scheduled. The trial judge found that LSUMC followed the same procedure in Ms. Leinweber's case and that, had Ms. Leinweber not chosen surgery as an option, the same unfortunate outcome would have resulted.
At trial, Plaintiffs presented the testimony of Theresa Williams, one of Ms. Leinweber's daughters, who stated that she was present in the room with her mother when Dr. Atha, who diagnosed the results of the catheterization, told her mother that she had vessels with high degrees of blockage and that she needed bypass surgery. Carol Pinnick, another daughter of Ms. Leinweber, testified that she was informed by her sister that her mother had major blockages in three arteries. The record, therefore, indicates that both Ms. Leinweber and her family were made aware of Ms. Leinweber's condition of three-vessel disease.
Plaintiffs urge, however, that although Ms. Leinweber was informed of her condition, she was not fully informed of the risk of "heart attack" and/or "sudden death" associated with her condition. Had Ms. Leinweber been so informed, Plaintiffs argue, she would not have consented to await the scheduling of surgery at LSUMC, but would have sought to promptly undergo bypass surgery at another facility.
To successfully prove lack of informed consent, Plaintiffs are required, in part, to show the existence of a reasonably foreseeable material risk of which Ms. Leinweber was uninformed. As stated above, the materiality *1054 of a risk depends on the existence and nature of the risk and the likelihood of its occurrence. Hondroulis v. Schuhmacher, supra; Yuska v. HCA Health Services of Louisiana, Inc., supra.
Plaintiffs' expert Dr. Henry Black testified that more likely than not, based on reasonable medical probability, Ms. Leinweber was going to have a heart attack "soon" after her discharge. Dr. Black could not, however, refer to any medical literature which indicated surgery should have been performed immediately.
Dr. Frederick White, III, a cardiologist and member of the medical malpractice panel, testified that a patient in Ms. Leinweber's condition, a stable three-vessel patient who is symptom-free and is properly medically managed, has a "low" risk of suffering an infarction. Dr. Master, an expert in cardiology, also testified that, while Ms. Leinweber was "at risk" of suffering an infarction, such an occurrence was "unpredictable" given that Ms. Leinweber was not having pain, was not on heparin and was not on IV nitroglycerine.
Considering the testimony of Drs. White and Master that Ms. Leinweber's risk of infarction was "low" and that the occurrence of such an event was "unpredictable," we cannot say that the Plaintiffs proved the existence of a material risk. The trial judge was not clearly wrong, therefore, in finding that Plaintiffs failed to carry their burden of proving lack of informed consent.
Since we find Plaintiffs failed to prove the existence of a material risk unknown to Ms. Leinweber, we do not discuss whether the disclosure of material risks was made.
Although, for the above reasons, we find no material risk unknown to Ms. Leinweber to have existed, we nevertheless address the issue of whether Plaintiffs carried their additional burden of proving that disclosure of the risk of "heart attack" and/or "sudden death" would have led a reasonable patient in Ms. Leinweber's position to reject the medical procedure or to choose a different course of treatment. Plaintiffs argue that if Ms. Leinweber been advised of the risks associated with waiting for surgery, she would have sought treatment by another physician or another hospital in order to be scheduled promptly for surgery.
Regarding the risks associated with treatment for a patient in Ms. Leinweber's condition, Dr. Jane Eggerstadt, an expert in cardiothoracic surgery, testified that, according to medical literature available in 1991, three-vessel disease patients with normal pump function who are treated surgically show no improvement in survival over similar patients treated medically without surgery. She further testified that it is not uncommon for a patient with known triple-vessel disease and normal pump function, who is stabilized and on medication, to be discharged and await elective surgery. According to Dr. Eggerstadt, at least 50% of triple-vessel disease patients are scheduled for regular non-emergency surgery.
Given the testimony of Dr. Eggerstadt that at least 50% of patients in Ms. Leinweber's condition are scheduled for regular non-emergency surgery, we cannot say that Plaintiffs proved that Ms. Leinweber would have chosen a different plan of treatment by seeking another physician or hospital in order to have the surgery earlier. Plaintiffs' claim of lack of informed consent must fall.

II. Was Defendants' treatment of Syble Leinweber reasonable, diligent and exercised with best judgment?

Plaintiffs further allege that Defendants breached the standard of care in the following ways: (1) by failing to properly inform Ms. Leinweber of her condition, treatment plan and options and informing her and/or her family of the risks associated with each; (2) by allowing Ms. Leinweber to be discharged to home without scheduling the needed surgery; (3) by failing to schedule and perform the surgery within 48 hours.
We have addressed the first allegation in the above discussion of informed consent. We next consider the assertions that Defendants breached the standard of care by discharging Ms. Leinweber without scheduling the surgery and by failing to perform the surgery on Ms. Leinweber within 48 hours.
In support of their argument, Plaintiffs stress Dr. Black's testimony that, to meet the standard of care, surgery within 48 hours was required. As stated above, however, Dr. *1055 Black could not refer to any medical literature indicating the necessity of immediate surgery.
Drs. Master and White both testified that LSUMC physicians did not violate the standard of care by scheduling the surgery at a later time and sending Ms. Leinweber home to await surgery. Dr. White stated he saw no "pressing, critical need" for Ms. Leinweber to have been sent elsewhere for the surgery. Dr. Master testified that he would consider emergency surgery indicated if the patient were having persistent pain, requiring IV nitroglycerine or IV heparin, circumstances which were not present in Ms. Leinweber's case.
Regarding patient evaluation, Dr. Eggerstadt testified that patients are classified into three categories: (1) emergency patients, in whom the surgery is done within 24 hours; (2) urgent patients, in whom surgery is performed within 48 hours; and (3) surgical candidates for whom surgery is scheduled as soon as practicable. According to Dr. Eggerstadt, the distinction among these categories involves consideration of the degree and location of occlusion and an analysis of the severity and frequency of symptoms experienced by the patient. Dr. Eggerstadt testified that Ms. Leinweber did not fit into any of the categories requiring emergency or urgent surgery.
Dr. Eggerstadt further stated that Ms. Leinweber was stabilized with moderate doses of medication and had excellent pump function. Dr. Eggerstadt testified that no existing evidence in literature indicated that such a patient needed urgent surgery and she did not feel Ms. Leinweber required emergency surgery. Dr. Eggerstadt further indicated that, as stated above, over 50% of similarly situated three-vessel condition patients at LSUMC are scheduled for non-emergency surgery.
When there are contradictory expert opinions concerning compliance with the standard, the reviewing court will give great deference to the conclusions of the fact-trier. Broadway v. St. Paul Ins. Co., 582 So.2d 1368 (La.App. 2d Cir.1991). In his written reasons for judgment, the trial judge stated:
In this instance, the preponderance of the credible evidence accepted by this court does not support the conclusion that the defendants breached the standard of care while treating Ms. Leinweber. This court specifically accepts and adopts the opinions of Drs. Master and White on that issue, and rejects the premise and conclusions of Dr. Black.
Appellate courts will not disturb such findings in the absence of clear error. Broadway v. St. Paul Ins. Co., supra. On the record before us, we cannot say that the trial judge was clearly erroneous to "reject" the testimony of Dr. Black in favor of the testimony of the other physicians. This assignment of error is without merit.

III. Did the trial court err in applying the burden of proof in this medical malpractice action?

Plaintiffs urge that the trial court wrongly required them to prove that, as a proximate result of Defendants' failure to exercise the proper degree of care, Ms. Leinweber suffered injuries she would not otherwise have incurred, rather than to prove that Ms. Leinweber merely suffered a loss of a chance of survival. Given our finding that the trial judge correctly found no breach of the standard of care by Defendants, this issue is moot.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiffs.
AFFIRMED.
NOTES
[1] Plaintiffs argue that the time allowed for the rendition of an opinion by the medical malpractice panel had expired and, therefore, the holding of the panel has no probative value. For purposes of this opinion, we assign no probative value to the panel opinion. Further, all references herein to the opinions of Drs. Herbert Master and Frederick White, III, panel members, are references to their testimony given at trial.