LOLLEY, J.
 

 [ ,In this medical malpractice case, plaintiffs appeal a judgment from the First Judicial Court, Parish of Caddo, State of Louisiana, where a jury found in favor of defendant, Dr. Deanna Donley, M.D. Plaintiffs now appeal.
 

 
 *989
 
 FACTS
 

 On June 6, 2003, Charlotte Bailey came to Dr. Donley complaining of pain due to a work-related back injury that occurred sometime in the 1970s. Bailey gave Dr. Donley a letter from her treating psychiatrist who had recently retired, Dr. James Phillips, outlining the medications and dosage Bailey had been taking for the past 10 years to manage her pain. The text of the letter, dated August 14, 2002, reads as follows:
 

 Deal’ Ms. Bailey,
 

 The purpose of this letter is to document for you that you have been a patient under my care for almost 15 years. I first saw you in late 1980, when you were in the old P & S Hospital for treatment of chronic back pain. You were addicted to narcotics and Benzodi-azapines [sic]. You were profoundly depressed. The treatment that you received from me has been successful and included getting you off of the depressing narcotics that you were taking, i.e., Pereodan, Trodine and other narcotics plus Valium and other anti-anxiety drugs. For the past 10 plus years, you have been maintained on a minimal amount of medication including Tofranil PM 150 mgs at bedtime for recurrent chronic depression. You have been taking Methadone 10 mgs every 4 to 6 hours p.r.n.
 
 [1]
 
 severe pain, averaging 3 to 4 a day. You take Phenergan 25 mgs with each Methadone to potentiate the pain relief. You take Paraflex 250 mgs, 1 or 2 q. 4 h p.r.n. muscle spasms. You take a laxative called Visicolate tablets, 5 mgs, 2 at bedtime when needed.
 

 I am happy to say that you have succeeded for more than 10 years, in not requiring hospitalization for recurrent back pain. You have not, in any way, abused the medication that you are currently taking.
 

 |2It is my recommendation that you seek the care of a family physician and make him aware that you have done extremely well for more than 10 years on this medical regime. You continue to be unable to do any significant manual work, standing for long periods of time, lifting, bending, stooping, etc., which renders you incapacitated to maintain gainful employment. You are on social security and you are disabled permanently and totally.
 

 I hope this letter will adequately suffice for you to present to your next physician as a summary of your situation. I hope that your next physician will be willing to take care of your medical needs as well as care for you in the treatment of your chronic pain, which will need to be addressed for the remainder of your life.
 

 Respectfully,
 

 s/James H. Phillips, M.D.
 

 When Dr. Phillips retired, he gave Bailey 400 10-mg pills of methadone so she could continue managing her pain while she looked for another doctor. Over the next two months, Bailey went to the emergency room several times for her pain and eventually needed pain medication since she had run out of her interim supply. She also asked for referrals to a physician as she was still without a doctor. The emergency room doctors gave her various short-term prescriptions for her pain before finally giving her a referral to Dr. Donley.
 

 Dr. Donley agreed to take her as a patient, and proceeded to write her a prescription for Methadone and Phenergan, consistent with Dr. Phillips’ letter.
 
 [2]
 
 How
 
 *990
 
 ever, Dr. Donley substituted Tofranil with another drug, Paxil, and gave Bailey samples to try out to see if she preferred it. Bailey came |aback to Dr. Donley on June 20th with a sprained foot and no other complaints were documented in her medical record. On July 5, 2003, Bailey died. According to the coroner’s report, Bailey died from “polypharmacy,” or multiple drug interaction. The drug screen in the autopsy report showed that along with the prescribed drugs in her bloodsteam which were not at toxic levels, she had an alcohol blood level of 0.045%.
 

 Micah Bailey, Gerald Bailey and Elizabeth Bailey Treece (“plaintiffs”) filed this suit against Dr. Deanna Donley, M.D., alleging that she breached the standard of care in connection with her treatment of them deceased mother, Charlotte Bailey. On February 19, 2004, pursuant to the requirements of the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41
 
 et seq.,
 
 appellants filed a claim with the Louisiana Patients’ Compensation Fund where the claim was presented to a medical review panel (“MRP”). The MRP rendered a unanimous decision that the evidence did not support the conclusion that Dr. Donley failed to meet the applicable standard of care and stated:
 

 The panel is of the opinion that the care and treatment by Dr. Donley was not below the expected standard of care for an internist in 2003. Dr. Donley’s initial evaluation of Ms. Bailey was very thorough, and she considered the letter from the psychiatrist. That letter did not recommend that Mrs. Bailey go to a psychiatrist but to a family physician. As an internist, Dr. Donley did not change the medication; she only substituted the Paxil, since Ms. Bailey had taken herself off of the Tofranil when she ran out of the medication several months earlier.
 

 The panel is of the opinion that the medical literature does not contraindicate the use of Paxil and Methadone concomitantly. Polypharmacy should have revealed itself much earlier, most likely within two weeks. The dosage of 25mg of Paxil was not excessive. The drug screen did not show that the Methadone or Paxil were at toxic levels. However, Mrs. Bailey reported no |.tcomplications to Dr. Donley that would have warranted further testing.
 

 Plaintiffs brought the instant action and this matter was tried before a jury which rendered a verdict in favor of Dr. Donley. Plaintiffs filed a motion for JNOV which the trial court denied. This appeal ensued.
 

 LAW AND DISCUSSION
 

 The plaintiffs’ sole assignment of error on appeal is that the jury was manifestly erroneous in concluding that Dr. Donley did not deviate from the applicable medical standard with regard to the treatment that she provided to decedent, Charlotte Bailey. Specifically, plaintiffs argue that the coroner’s finding that Bailey died from po-lypharmacy was caused by Dr. Donley’s multiple deviations from the applicable medical and pharmacological standards of care. In addition, plaintiffs allege that Dr. Donley failed to warn Bailey not to consume alcohol while on these medications.
 

 The jury’s finding in a medical malpractice case is subject to manifest error review; it cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong.
 
 Stobart v. State through Dept. of Transp. and Development,
 
 617 So.2d 880 (La.1993);
 
 Tan
 
 
 *991
 

 ner v. Cooksey,
 
 42,010 (La.App.2d Cir.04/04/07), 954 So.2d 335,
 
 writ denied,
 
 2007-0961 (La.06/22/07), 959 So.2d 508. In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding; and, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. The appellate court must |snot reweigh the evidence or substitute its own factual findings because it would have decided the case differently.
 
 Pinsonneault v. Merchants & Farmers Bank, & Trust Co.,
 
 2001-2217 (La.04/03/02), 816 So.2d 270.
 

 Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination.
 
 Stobart, supra.
 
 But where such factors are not present, and a fact finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
 
 Salvant v. State,
 
 2005-2126 (La.07/06/06), 935 So.2d 646.
 

 In a medical malpractice case, La. R.S. 9:2794(A) states the plaintiff has the burden of proving the following:
 

 (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
 

 (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
 

 |fi(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
 

 Resolution of each of these inquiries is a determination of fact which should not be reversed on appeal absent manifest error.
 
 Martin v. East Jefferson General Hosp.,
 
 582 So.2d 1272 (La.1991);
 
 Tanner, supra.
 

 Where there are conflicting expert opinions concerning the defendant’s compliance with the standard of care, the reviewing court will give great deference to the conclusions of the trier of fact.
 
 Pinnick v. Louisiana State University Medical Center,
 
 30,263 (La.App.2d Cir.02/25/98), 707 So.2d 1050. Here, in addition to the coroner’s report and the MRP’s decision, the jury had the opportunity to hear testimony from experts on both sides.
 

 Plaintiffs’ Witnesses
 

 The plaintiffs, Bailey’s children, all testified and agreed that their mother was in pain but with the prescribed medicine from Dr. Phillips, the pain seemed manageable. They also testified that it was difficult to find a doctor that was willing to
 
 *992
 
 treat their mother after Dr. Phillips retired since she was a worker’s compensation patient. They all acknowledged that Bailey had an occasional glass of wine.
 

 The first expert witness, Dr. Paul Gene-cin, a professor of internal medicine at Yale Medical School, testified that in his opinion, Dr. Donley made numerous errors but specifically should not have reinstitut-ed the drugs at the same dosage that Dr. Phillips outlined in his letter. Dr. Genecin believed that Bailey had lost her tolerance for the drugs during the interim period without a doctor and her medication. In addition, Dr. Genecin also testified that he believed that substituting the Tofranil with Paxil was in |7error, because Tofranil also helped with her pain. Finally, according to Dr. Genecin, although the amount of prescription drugs that were found in her system were considered to be in the “therapeutic range,” the interaction among them can still be harmful.
 

 Dr. Richard Williams, a psychiatrist and an addiction medicine specialist, opined that Dr. Donley violated the federal guidelines for dosage protocols. Dr. Williams testified that Dr. Donley should not have relied on Dr. Phillips’ letter as the starting point for Bailey’s medication. He also did not agree with Dr. Donley’s decision to substitute Paxil for the Tofranil. Dr. Williams opined that Bailey’s death was a result of the multiple drug interaction including the alcohol.
 

 Defendant’s Witnesses
 

 Dr. John Felty, one of the emergency room doctors who treated Bailey on April 29, 2005, testified that she came in with a chief complaint of needing pain medication. Dr. Felty, after reviewing her medical history and conducting a physical exam, prescribed her 30 10-mg tablets of methadone with instructions to take three to four times as needed for severe pain. Dr. Felty acknowledged that since Methadone is a narcotic he must first determine whether the patient’s need for the drug is legitimate before prescribing it. He also prescribed Bailey Flexeril, a muscle relaxer, and Phenergan. Dr. Felty also noted that he tried to refer her to a doctor for pain management.
 

 Dr. Richard Haynie, one of the members on the MRP, testified that he did not believe there was a breach in the standard of care in this case. He |Rtestified that he has read the literature and believes that Paxil was a better drug, and a good choice to substitute for Tofranil, because it has fewer side effects. Dr. Haynie opined that Dr. Donley, as an internist, was qualified to change from Tofranil to Paxil. He also felt that Dr. Donley’s examination and questioning were thorough.
 

 Dr. Carolyn Burton, also a member on the MRP, stated in her video deposition that the “Physicians’ Desk Reference” did not prohibit the dosages and the combination of Methadone, Phenergan, and Paxil were appropriate in this case. Dr. Burton opined that it was unlikely that Bailey had a “reaction” to these drugs given that the autopsy report concluded the amount in her system to be in the “therapeutic range.”
 

 Dr. James Phillips, Bailey’s previous psychiatrist, testified that he had her on Methadone, Tofranil, and Phenergan for over 10 years and believed he was successful in managing her pain. Dr. Phillips also testified that he did not think Bailey ever abused the medication she was taking; however, he did know that she consumed alcohol, socially, despite his warnings against it. He further testified that given Bailey had been prescribed medication when she went to the emergency room during the interim period, it was his opinion that she would not have been out of medication very long before she saw Dr. Donley.
 

 
 *993
 
 Dr. Donley testified that at the initial visit she did a series of tests including evaluating the strength and sensation of Bailey’s legs, the area she was suffering greatest from the pain, and found that to be consistent with the issues Bailey has discussed. Dr. Donley also testified that generally she |3did not make it a practice to give people narcotics when they first show up; however, the letter indicated that she did well with the drugs for ten years, so she made an exception. She testified that she gave Bailey samples of Paxil, because it has fewer side effects than Tofranil, and explained that if Bailey liked it she was going to give her a prescription. Dr. Donley also noted that she gave Bailey a follow-up appointment for four weeks later, but Bailey came in June 20, 2003, because she had injured her right foot. Dr. Donley testified that her notes did not indicate Bailey complained of any other pain.
 

 The record reveals that the jury was presented with two permissible views of the evidence. However, the jury’s finding that Dr. Donley did not breach the standard of care in her treatment of Bailey is supported by the record. The MRP opinion clearly indicated that Dr. Donley did not breach the standard of care and challenged the coroner’s finding that “poly-pharmacy” was Bailey’s cause of death. The jury heard two of the three MRP physicians’ testimony that they still support their conclusion and that Dr. Donley was qualified to make the drug substitution. Dr. Haynie also confirmed that the fact the drug screen found the medication to be in the “therapeutic range” confirms that Bailey likely did not die from an adverse drug reaction.
 

 In addition, Dr. Phillips testified that Bailey was fully aware that drinking alcohol while on the medications was not appropriate. However, she continued to drink her occasional glass of wine throughout the time she was his patient. The evidence also showed the warning labels on all | mprescribed medication bottles. The jury did not find the perceived lack of warning regarding consumption of alcohol and the drugs to be persuasive, and we agree.
 

 Of notable interest is that Dr. Phillips prescribed Bailey doses that were not in accordance with the “federal guidelines” standard as set forth by plaintiffs’ expert. Also, Dr. Felty prescribed Flexeril, a muscle relaxer, for Bailey during her emergency room visit, which had not been a part of her regimen with Dr. Phillips; however, no evidence was presented on its possible drug interaction. In addition, plaintiffs’ own witness believed alcohol played a part in the “polypharmacjf’ cause of death. As such, we cannot find Dr. Donley responsible for Bailey’s untimely death.
 

 Dr. Donley testified that she was not in the habit of taking on a methadone patient and made an exception after she saw how much pain Bailey was in. While we empathize with the plaintiffs’ loss of their mother, we do not wish to place a chilling effect on doctors who take on patients with pre-existing conditions or have a complicated medical history. In this matter, the jury was presented with two permissible views of the evidence regarding whether Dr. Donley breached the standard of care in her treatment of Charlotte Bailey. The jury chose to credit the MRP opinion, Dr. Donley and her experts over the evidence presented by the plaintiffs. The record does not contradict that finding.
 

 CONCLUSION
 

 After a review of the record, we do not find the jury was manifestly | n erroneous in its conclusion that Dr. Donley did not breach the standard of care in her treat
 
 *994
 
 ment of Charlotte Bailey. Costs of this appeal are to be borne by the plaintiffs.
 

 AFFIRMED.
 

 [1]
 

 . p.r.n.: Pro re nata, a medical term for "as the situation arises” or “as needed.”
 

 [2]
 

 . According to the record, because she had not had any success finding a doctor, Bailey
 
 *990
 
 asked for an appointment indicating she would be a “cash” patient; however, this was
 
 2,
 
 pretext so she could be seen, as she was actually a workers' compensation patient.