COOKS, J.,
dissenting.
hi agree with the portion of the majority’s opinion affirming the jury verdict finding Dr. Humphries obtained Mr. Price’s consent. The facts were greatly in dispute, and the jury apparently accepted Dr. Humphries version that a conversation did occur between he and Mr. Price concerning the possibility of removing polyps if they were discovered. Further, the consent form, which Mr. Price signed, created a presumption in favor of Dr. Humphries that he advised Mr. Price of the risks connected with the proposed procedure and that Mr. Price had given an informed consent.
However, I dissent from the portion of the majority’s opinion affirming the jury’s verdict finding Mr. Price consented to the polypectomy performed by Dr. Bride. Normally, when there are conflicting expert opinions concerning compliance with the standard of care, the reviewing court will give great deference to the conclusions of the trier of fact. Pinnick v. Louisiana State University Medical Center, 30,263 (La.App. 2 Cir. 2/25/98), 707 So.2d 1050. In this case, Dr. Eugene Trowers testified Dr. Humphries and Dr. Bride failed to meet the applicable standard of care in gaining consent. He noted Dr. Bride’s name was nowhere to be found on the consent form. He also stated in similar situations, when a “family practitioner would |2have performed a screening procedure, [and] noted some polyps,” it would have been appropriate for the family practitioner to have then “referred the patient to me to perform a colonoscopy with poly-pectomy at a later date. ” (Emphasis added). In contrast, Dr. Stephen Person, who testified as an expert for Defendants, stated he has been “in a situation almost identical to what happened back on January 17th, 2002” and felt “perfectly at liberty to go forward with [the] polypectomy procedure based on the consent form.” This case, however, does not turn on the conflicting testimony given by the two experts. The issue of consent here involves a pure application of the law.
Under the Uniform Consent Law, consent may be obtained in writing in accordance with Subsection A or under Subsection C it may be “other than in accordance with Subsection A,” which presumably would mean verbal consent proven by par-ol evidence. A third method for securing the patient’s consent is set forth in Subsection E, and provides “as an alternative [to Subsections A and C], a physician or other health care provider may choose to avail himself of the lists established by the secretary [of the Department of Health and Hospitals] pursuant to the provisions of *998 this Subsection as another method by which to evidence a patient’s consent to medical treatment.” However, La.R.S. 40:1299.40(E)(7)(c) mandates that the duty of disclosing risks and hazards to the patient falls upon “the physician or other health care provider who will actually perform the contemplated medical or surgical procedure.”
Plaintiffs maintain the “duty of disclosing risks and hazards to the patient” required by La.R.S. 40:1299.40(E)(7)(C) is imposed on the physician “who will actually perform the contemplated medical or surgical procedure.” Dr. Bride, not Dr. Humphries, performed the polypectomy. Dr. Bride himself had a duty, as the physician actually performing the procedure, to inform Mr. Price about the risks of |sthe polypectomy. There was no written consent obtained by Dr. Bride under Section A of the Uniform Consent Statute. And there was no valid verbal consent obtained by Dr. Bride under either Section C or Section E of the statute.
I also find it was error for the trial court not to charge the jury on the law found in Subsection E(7) of the La.R.S. 40:1299.40. As set forth earlier, that section establishes in order for a physician to be covered by Subsection E, “the physician ... who will actually perform the contemplated medical or surgical procedure” has to fulfill the duties required in Subsection E. Defense counsel successfully convinced the trial court, over Plaintiffs’ objection, to exclude any reference to Subsection E(7) in its jury charge. This was error and resulted in the jury receiving an incomplete and inaccurate jury charge.
Further, I believe the jury may have erroneously believed it was imperative that the polypectomy be informed immediately. Despite the absence of any testimony that the polypectomy needed to be performed on January 17, and Dr. Bride’s specific testimony that polyps do not need to be removed immediately when discovered, Dr. Humphries’ counsel told the jury in his closing:
And, remember, which has been lost in this filing of the lawsuit and alleging negligence on his doctors is that of those doctors, those procedures saved Mr. Price’s life. If that polypectomy had not been performed, Mr. Price wouldn’t be with us. He would have developed colon cancer, and he would have died.
The performance of the polypectomy cannot be said to have been an emergency procedure. Dr. Humphries had already ended the screening procedure for which his services were retained when Dr. Bride was called in to perform the polypectomy. There was no immediate threat to the health of Plaintiff that required the immediate performance of the polypectomy. In Pizzalotto v. Wilson, 437 So.2d 859 (La.1983), the Louisiana Supreme Court established the rule that a physician may not act beyond his patient’s authorization, except when a situation seriously threatens the health or |4life of the patient. That exception represented the one instance where a patient’s consent would be implied. The court in Pizzalotto found even though the patient there would require a hysterectomy within six to eight days in order to avoid danger to her health, it was not an emergency which warranted the performance of a hysterectomy without consent. Dr. Bride’s belief that a polypec-tomy would benefit Mr. Price does not, under Pizzalotto, legally justify its performance without the patient’s consent.
Dr. Bride also attempts to “piggyback” on the consent form Dr. Humphries had Mr. Price sign just prior to the beginning of the colonoscopy. First, he argues the wording of the consent form makes him an “authorized physician” to perform the po-lypectomy. In support of this argument, *999 he cites the following provision of the consent form:
Consent: I hereby authorize the designated authorized physician/group, together with associates and assistants of his/her choice, to administer or perform the medical treatment or surgical procedure described in Item 2 of this Consent Form, including any additional procedures or services as they may deem necessary ...
Dr. Bride argues he was an associate of Dr. Humphries who performed an additional procedure as deemed necessary by Dr. Humphries. Thus, he argues the consent form, which by law granted a presumption of valid consent to Dr. Hum-phries to perform the screening colonos-copy, applies to him in his performance of the polypectomy. I disagree. The reference to associates and assistants in the consent form is meant to apply to nurses and surgical assistants on the contemplated procedure, not another doctor brought in after the original proceeding is stopped, to perform an additional procedure.
Dr. Bride also argues the valid consent obtained by Dr. Humphries for the colo-noscopy includes consent for the polypec-tomy. In support of this, he cites Larche v. Rodriguez, 00-0881(La. App. 4 Cir. 5/17/00), 765 So.2d 388, writ denied, 00-1817 (La.9/22/00), 768 So.2d 1290, for the proposition that a valid consent for one procedure includes consent for another. I agree Larche is insightful, but find it is supportive of Plaintiffs’ arguments rather than those of Defendants. In that case, James Larche had deformities affecting both his right foot and his left foot. He sought medical treatment for his left foot from Dr. Sanchez. Dr. Sanchez referred him for treatment to Dr. Rodriguez, an orthopedic surgeon. Dr. Rodriguez recommended surgery.
Later after consulting with Dr. Buckley, another orthopedic surgeon, Larche signed a consent form stating that the procedure to be performed was “multiple tarsal os-teotomies and arthrodesis.” At that time, Dr. Buckley was a resident working under the supervision of Dr. Rodriguez. Drs. Rodriguez and Buckley then performed surgery on Larche’s left foot.
Larche complains that neither Dr. Rodriguez nor Dr. Buckley explained that a triple arthrodesis was a possible procedure. Larche filed suit against Dr. Rodriguez, alleging that he failed to obtain his consent for the triple arthrodesis. The claims were considered by a medical review panel, and it unanimously concluded that Dr. Rodriguez had obtained Larche’s consent to the triple arthrodesis, through the written consent signed by Larche.
Larche argued Dr. Rodriguez performed a procedure to which Larche had not consented. Among his arguments was that the presumption of consent derived from a signed consent form did not apply to the facts of his case because Dr. Buckley, not Dr. Rodriguez, obtained Larche’s signature on the consent form and that Dr. Rodriguez actually performed the procedure. Larche noted the law requires that the actual medical professional performing the procedure has a duty under La.R.S. 40:1299.40 to obtain informed consent from the patient. While acknowledging it is the law that the actual physician performing the procedure must obtain consent, the ¿court found the facts in this case allowed Dr. Rodriguez the benefits of the presumption because Dr. Buckley actually participated in Larche’s surgery and was acting at the direction of Dr. Rodriguez. Thus, the appellate court saw “no reason to deny Dr. Rodriguez the benefits of the presumption.” Id. at 389.
In the present case, Dr. Humphries, who obtained Mr. Price’s written consent, did *1000 not participate in the polypectomy, and was not even in the room when it was performed. Thus, the facts here are distinguishable from those in Larche.
Defendants also argues since Mr. Price did not specifically testify that he would not have had the polypectomy procedure if he had been made aware of it pre-opera-tively, he fails on the causation issue. They cite Lugenbuhl v. Dowling, 96-1575, p. 12 (La.10/10/97), 701 So.2d 447, 454, wherein the Louisiana Supreme Court noted a Plaintiff in “a lack of informed consent case must prove not only that the physician failed to disclose all material information, but also that there was a causal relationship between the doctor’s failure and the damages claimed by the patient.” Specifically, they note Lugenbuhl provides a plaintiff must “prove that a reasonable patient in the plaintiffs position would not have consented to the treatment or procedure, had the material information and risks been disclosed.” Id. Defendants urge Mr. Price’s failure to specifically state he would have refused the polypectomy had he been informed of it on January 17, 2002 is fatal to the issue of causation. I do not agree.
As Plaintiffs point out, this is not a lack of informed consent case, but a no consent case. Plaintiffs do not object to any risks not being disclosed, or whether there was adequate disclosure. Instead, they contend there was never any consent to the polypectomy being performed or to Dr. Bride touching his body in any manner. The Lugenbuhl court specifically recognized a patient has an absolute right, for whatever reason, to prevent unauthorized intrusions and treatments upon his person.
|7In footnote 5 of its opinion, the Court stated:
On the other hand, one can hardly argue that it is not below the appropriate standard of care for a doctor or nurse to perform a medical procedure without obtaining any consent.
Id. at 452. (Emphasis added)
Dr. Bride’s failure to obtain valid consent from Mr. Price caused him to be subjected to potential risks which unfortunately materialized, and which caused him injury. Dr. Bride had a duty under the law, as the physician performing the poly-pectomy, to inform Mr. Price of the risks inherent in that procedure. He breached that duty, and thus is liable to Plaintiffs for the injuries which they suffered.
Therefore, I dissent from the majority’s opinion affirming the jury’s verdict finding Mr. Price consented to the polypectomy performed by Dr. Bride. Mr. Price is entitled to damages for the injuries he incurred as a result of Dr. Bride’s breach of duty to obtain his valid consent.